UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| EVANSTON INSURANCE COMPANY,<br><br>     Plaintiff,<br><br>  v.<br><br>ATAIN SPECIALTY INSURANCE COMPANY,<br><br>     Defendant. | Case No. 16-CV-04304-LHK<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 49 |

Plaintiff Evanston Insurance Company (formerly, Markel Service Incorporated) ("Plaintiff") brings this insurance coverage action against Defendant Atain Specialty Insurance Company ("Defendant") seeking declaratory relief. ECF No. 55 (Second Amended Complaint, or "SAC"). Before the Court is Defendant's Motion for Summary Judgment. ECF No. 49 ("Mot."). Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS Defendant's Motion for Summary Judgment.

## I.      BACKGROUND

### A.   Factual Background

Plaintiff and Defendant agree that the facts in the instant suit are undisputed. Plaintiff and Defendant both insure Norcal Motor Escort, LLC ("Norcal"), a motorcycle escort business. SAC

¶ 7. Specifically, Norcal has an Automobile Insurance Policy with Plaintiff , ECF No. 49-2 at 20–64 ("Pl. Auto Policy"), and Norcal has a Commercial General Liability Coverage Policy with Defendant ("Defendant's CGL policy"), ECF No. 49-1 (Def. CGL Policy).

The instant dispute arises out of an automobile collision that involved Norcal's employees. SAC ¶ 3. On November 2, 2012, Norcal employees Mario Hernandez ("Hernandez") and Robert Keyarts ("Keyarts") were serving as motorcycle escorts for a funeral procession in San Jose, California. *Id.* ¶¶ 2–3. Hernandez and Keyarts were both acting within the scope of their employment for Norcal. ECF No. 49-2 at 5–13 ("Pl. Admissions"). Hernandez approached an intersection and began directing traffic and pedestrians through the intersection. SAC ¶ 3. A pedestrian, Brittany Cohen ("Cohen"), entered the intersection on a bicycle. *Id.* Keyarts, rode a motorcycle from the back of the funeral procession towards the intersection and attempted to brake, but "fell and slid into Cohen and Hernandez." *Id.*

On October 31, 2014, Cohen sued Norcal, Hernandez, and Keyarts for negligence in the Superior Court of Santa Clara County (the "underlying action"). ECF No. 49-3 Ex. A ("State Court Compl.").[1] In the underlying action, Cohen's State Court Complaint asserted causes of action for motor vehicle negligence and general negligence. With respect to Hernandez, Cohen alleged the following facts:

> [Hernandez] was directing traffic and pedestrians as an escort for a funeral procession. He directed pedestrians, including [Cohen], to cross 10th Street from west to east, while the funeral procession was stopped facing southbound. The procession was negligently allowed to stop with vehicles in the intersection.

---

[1] Defendant requests judicial notice of the October 31, 2014 complaint filed in the Superior Court of Santa Clara County. The Court may take judicial notice of matters that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Public records are proper subjects of judicial notice. *See, e.g.*, *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007) ("[Courts] may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."). Accordingly, Defendant's request for judicial notice is GRANTED. However, to the extent any of the facts in these documents are subject to reasonable dispute, the Court does not take judicial notice of those facts. *See Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001) ("A court may take judicial notice of matters of public record . . . But a court may not take judicial notice of a fact that is subject to reasonable dispute.") (internal quotation marks omitted), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

United States District Court
Northern District of California

> After [Hernandez] initially directed pedestrians to stop and wait on the west side of 10th Street, he then directed them to proceed to cross eastbound in the marked crosswalk, while the funeral procession remained stopped. The pedestrians, including [Cohen], were crossing following the instruction of Defendant, who appeared to be a police officer. Plaintiff was walking her bicycle and had cleared the closest southbound lane of traffic. The next lane had no vehicles in it. As she crossed, she was struck by a motorcycle that was part of the funeral escort, driven by Defendant Robert Keyarts. Unbeknownst to Plaintiff, Keyarts had left the rear of the procession and was driving southbound in the next lane. He approached the intersection without warning. Defendant Hernandez did not warn [Cohen] or other pedestrians of the approaching motorcycle driven by Robert Keyarts. He did not warn Robert Keyarts of the pedestrians he had directed to cross 10th Street.

State Court Compl. at 8. With respect to Keyarts, Cohen alleged the following facts:

> [Keyarts] was working as an escort for a funeral procession. He negligently operated the motorcycle he was riding, negligently failed to communicate with Defendant Hernandez as to pedestrians in the area, and failed to warn [Cohen] and other pedestrians that [Keyarts] was approaching the intersection, while the funeral procession vehicles were stopped.

*Id.* at 9.

On June 24, 2015, pursuant to Defendant's CGL policy, Plaintiff tendered to Defendant the defense and indemnity of Norcal and Hernandez. SAC ¶ 7. On August 25, 2015, Defendant declined Plaintiff's tender, refused to provide a defense or indemnity to Norcal, and argued that the funeral procession collision was excluded from Defendant's CGL policy under an "Auto Exclusion." *Id.* ¶ 8.

Upon Defendant's denial of the tender of defense and indemnity, Plaintiff "provided a defense and indemnified [Norcal] by paying $105,000.00 to Cohen for bodily injury damages" under the terms of Norcal's Automobile Insurance Policy with Plaintiff. *Id.* ¶ 10. Plaintiff asserts in its opposition to the instant motion that it spent $28,531.77 on the defense of the underlying action. ECF No. 50 (Opposition to the instant motion).

### B. Procedural History

On May 13, 2016, Plaintiff sued Defendant in the Superior Court for Santa Clara County. Plaintiff's original complaint alleged causes of action for subrogation and indebtedness and demanded monetary damages in the sum of $105,000. *See* ECF No. 1 at 7–8.

On July 29, 2016, Defendant filed a notice of removal and removed this action to the United States District Court for the Northern District of California on the basis of diversity jurisdiction. ECF No. 1 at 1.

On August 25, 2016, Plaintiff filed a motion to remand this action to state court. ECF No. 15. On September 8, 2016, Defendant filed an opposition to Plaintiff's motion to remand. ECF No. 18. Plaintiff did not file a reply.

On August 29, 2016, Defendant filed a motion to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6). ECF No. 17. On October 4, 2016, Plaintiff filed an opposition to Defendant's motion to dismiss, ECF No. 23, and on October 11, 2016, Defendant filed a reply, ECF No. 31.

Plaintiff filed a First Amended Complaint ("FAC") on October 12, 2016. ECF No. 34. Plaintiff's FAC stated that "[t]his is an action for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201." *Id.* at 1. Plaintiff alleged four causes of action: (1) duty to defend, (2) duty to indemnify, (3) declaratory judgment that defendant owed Norcal a duty to defend, and (4) declaratory judgment that Defendant owed Norcal a duty to indemnify. *Id.* at ¶¶ 18–31.

On October 12, 2016, in light of Plaintiff's FAC, the Court denied Defendant's motion to dismiss the original complaint as moot. ECF No. 33. On October 25, 2016, Defendant answered the FAC. ECF No. 36.

On November 10, 2016, the Court denied Plaintiff's motion to remand. ECF No. 37.

On February 22, 2017, Defendant filed the instant motion for summary judgment. ECF No. 49 ("Mot."). On March 8, 2017, Plaintiffs filed an opposition in which Plaintiff requested summary judgment pursuant to Federal Rule of Civil Procedure 56(f)(1). ECF No. 50 ("Opp'n"). On March 15, 2017, Defendant filed a reply. ECF No. 53 ("Reply").

On March 20, 2017, the Court granted the parties' stipulation to file a second amended complaint ("SAC") that changed the name of Markel Service Incorporated to Evanston Insurance Company because of a recent merger. ECF No. 54. On March 21, 2017, Plaintiff filed an SAC

4

with Plaintiff's name changed to Evanston Insurance Company. *See* SAC.

On March 21, 2017, Plaintiff filed a Supplemental Brief in Reply to Defendant's Opposition to Plaintiff's F.R.C.P. 56(f)(1) Request for Summary Judgment. ECF No. 56 ("Pl. Supp. Brief"). On March 24, 2017, Defendant filed an Administrative Motion to Strike Plaintiff's Supplemental Brief. ECF No. 57 ("Strike Mot."). On March 29, 2017, Plaintiff filed an opposition to the administrative motion to strike. ECF No. 60 ("Strike Opp'n").

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. However, on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The court is only concerned with disputes over material facts and "factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party

United States District Court
Northern District of California

has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

At the summary judgment stage, the court must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

## B. State Law in Diversity Cases

"In determining the law of the state for purposes of diversity, a federal court is bound by the decisions of the highest state court." *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 530 (9th Cir. 2011). If the state's highest court has not decided an issue, it is the responsibility of the federal courts sitting in diversity to predict "how the state high court would resolve it." *Id.*; *Air-Sea Forwarders, Inc. v. Air Asia Co., Ltd.*, 880 F.2d 176, 186 (9th Cir. 1989) (internal quotation marks omitted). In the absence of clear authority, the Court looks for guidance from decisions of the state appellate courts and other persuasive authorities, such as decisions from courts in other jurisdictions and treatises. *Strother v. S. Cal. Permanente Med. Grp.*, 79 F.3d 859, 865 (9th Cir. 1996).

## III. DISCUSSION

Plaintiff asserts four causes of action: (1) duty to defend, (2) duty to indemnify, (3) declaratory judgment that defendant owed Norcal a duty to defend, and (4) declaratory judgment that Defendant owed Norcal a duty to indemnify. However, Plaintiff fails to provide, and the Court is unaware of, any authority that states that the first two causes of action, duty to defend and duty to indemnify, are standalone causes of action. Moreover, Plaintiff's prayer for relief, aside from a request for costs and attorney's fees, solely requests declaratory relief. Thus, the duty to defend and duty to indemnify causes of action are, at the most, duplicative of the declaratory judgment causes of action.

6

United States District Court
Northern District of California

Plaintiff seeks a declaratory judgment that Defendant owed Norcal a duty to defend and a duty to indemnify in the underlying action. Under California law, "[a] liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity" under the policy. *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 295 (1993) ("*Montrose I*") (quoting *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993)). The duty to defend is broader than the duty to indemnify and, thus, "an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded." *Id.* (citing *Horace*, 4 Cal. 4th at 1081).

While the duty to defend is broad, it "is not unlimited." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 19 (1995). In determining whether there is a duty to defend, courts must look to the complaint in the underlying action and "all facts known to the insurer from any source." *Montrose I*, 6 Cal. 4th at 300. The ultimate question is whether the facts known to the insurer at the time it refused to defend the underlying action created the potential for coverage under the policy. *Gunderson v. Fire Ins. Exch.*, 37 Cal. App. 4th 1106, 1114 (1995) ("[T]he issues here are what facts respondent knew at the time appellants tendered the defense of the Ferrando lawsuit, both from the allegations on the face of the third party complaint, and from extrinsic information available to it at the time; and whether these *known facts* created a potential for coverage under the terms of the Policy."). If there was no potential for coverage under the insurance policy based on the complaint in the underlying action and extrinsic facts made known to the insurer, then the insurer has not breached the insurance contract by refusing to defend. *Montrose I*, 6 Cal. 4th at 295 (holding that duty to defend ends when it is apparent there is "no potential for coverage").

In interpreting an insurance policy, the Court first looks to the language of the policy itself. "Where no dispute surrounds material facts, interpretation of an insurance policy presents solely a question of law." *Jauregui v. Mid-Century Ins. Co.*, 1 Cal. App. 4th 1544, 1548 (1991). The "clear and explicit meaning" of the provisions "interpreted in their ordinary and popular sense . . . controls judicial interpretation unless [the disputed terms are] used by the parties in a technical sense, or unless a special meaning is given to them by usage." *Montrose Chem. Corp. v. Admiral Ins. Co.*, 10 Cal. 4th 645, 666 (1995) ("*Montrose II*").

7

Additionally, "any provision that takes away or limits coverage reasonably expected by an insured must be conspicuous, plain and clear." *Haynes v. Farmers Ins. Exch.*, 32 Cal. 4th 1198, 1204 (2004) (internal quotation marks and citations omitted). California courts do not apply coverage limitations if the insured has an objectively reasonable expectation of coverage under the policy, and the limitation on that reasonably expected coverage is either (1) not conspicuous, or (2) not plain and clear. *Travelers Prop. Cas. Co. of Am. v. Superior Court*, 215 Cal. App. 4th 561, 578 (2013) ("*Travelers*"). The insurer has the burden of showing that a limitation on coverage reasonably expected under the policy is conspicuous, plain, and clear. *Haynes*, 32 Cal. 4th at 1204 ("The burden of making coverage exceptions and limitations conspicuous, plain and clear rests with the insurer." (citations omitted)).

The Court first identifies the relevant contractual language in Defendant's CGL policy. Second, the Court addresses whether Defendant's duty to defend was triggered by the underlying action. Third, the Court discusses whether Defendant's duty to indemnify was triggered by the underlying action. Finally, the Court discusses Plaintiff's Rule 56(f)(1) request for summary judgment and Defendant's motion to strike Plaintiff's supplemental brief.

### A.    Contractual Language

Defendant's CGL policy contains the following insuring clause:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit'' seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

ECF No. 49-1 at 41, Def. CGL Policy.

Defendant's CGL policy contains the following endorsement:

> **THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**
> **AMENDMENT - AIRCRAFT, AUTO OR WATERCRAFT EXCLUSION**
> This endorsement modifies insurance provided under the following:
> COMMERCIAL GENERAL LIABILITY COVERAGE FORM
> . . . .
> **SECTION I - COVERAGES, COVERAGE A BODILY INJURY AND**

**PROPERTY DAMAGE LIABILITY**, **2. Exclusions**, paragraph **(g.) Aircraft, Auto Or Watercraft** is deleted and replaced with the following:
**g. Aircraft, Auto or watercraft**
This insurance does not apply to:
. . . .
(2) "Bodily injury" or "property damage" arising out of or in connection with any "auto" unless as outlined below; or
(3) The "loading or unloading" of any aircraft, "auto" or watercraft by any insured.
This exclusion applies to "bodily injury" or "property damage" arising out of any aircraft, "auto" or watercraft, whether or not owned, maintained, used, rented, leased, hired, loaned, borrowed or entrusted to others or provided to another by any insured.
This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, entrustment, permitting, training or monitoring of others by an insured.
This exclusion applies even if the claims against any insured allege direct or vicarious liability.

ECF No. 49-1 at 22, Def. CGL Policy.

The Definitions section of Defendant's CGL policy defines the term "auto" to mean "[a] land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment." *Id.* at 52, Def. CGL Policy. Defendant's CGL policy also defines "bodily injury" to mean "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." *Id.* at 53, Def. CGL Policy.

### B. Duty to Defend

As noted above, Defendant had a duty to defend if there was even a potential for coverage under Defendant's CGL policy. Thus, the Court looks to the complaint in the underlying action to determine whether there was a potential for coverage in Defendant's CGL policies. The complaint in the underlying action brought by Cohen against Norcal, Hernandez, and Keyarts alleges that Cohen was injured as a result of Keyarts' and Hernandez's negligence. With respect to Keyarts, Cohen alleged that "[Keyarts negligently operated the motorcycle he was riding, negligently failed to communicate with Defendant Hernandez as to pedestrians in the area, and failed to warn [Cohen] and other pedestrians that [Keyarts] was approaching the intersection, while the funeral procession vehicles were stopped." State Court Compl. at 9. With respect to

9

Hernandez, Cohen alleged that Hernandez failed to warn or stop Keyarts, negligently directed Cohen and other pedestrians into the intersection, and failed to warn Cohen and the other pedestrians of Keyarts' approach. State Court Compl. at 8.

The parties do not dispute that the insuring clause of Defendant's CGL policy would apply to the underlying action if an exception to coverage did not apply. Under Defendant's CGL policy, Defendant is responsible for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." ECF No. 49-1 at 41, Def. CGL Policy. Cohen's injuries that resulted from Keyarts' hitting her with his motorcycle clearly constitute "bodily injury." Plaintiff concedes that Keyarts' motorcycle was an auto within the meaning of Defendant's CGL policy. Therefore, liability arising from Keyarts' collision with Cohen would normally trigger the terms of the policy.

Defendant argues, however, that the auto exclusion prevents coverage under Defendant's CGL policy. The auto exclusion states that Defendant's CGL policy does not apply to "'[b]odily injury' or 'property damage' arising out of or in connection with any 'auto.'" ECF No. 49-1 at 22, Def. CGL Policy. Defendant argues that because the injuries suffered by Cohen at issue in the underlying action were caused by a motorcycle crashing into Cohen, the underlying action involves "'bodily injury' . . . arising out of or in connection with any 'auto.'" *Id.*

In response, Plaintiff does not argue that the exclusion is not conspicuous, plain, and clear. Instead, Plaintiff argues that the auto exclusion does not apply because Cohen's injuries were caused by more than a single cause. Specifically, Plaintiff argues that although the auto exclusion in Defendant's CGL policy applies to Keyarts' negligent driving, the auto exclusion does not apply to Hernandez's negligent actions—his direction of traffic and pedestrians. Plaintiff argues that because there was one covered cause and one excluded cause to Cohen's injuries, the concurrent proximate cause doctrine defined in *State Farm Mutual Automobile Insurance Co. v. Partridge*, 10 Cal. 3d 94 (1973), causes coverage under Defendant's CGL policy to be triggered.

The Court first discusses the legal background concerning the concurrent proximate cause doctrine, and then discusses whether the concurrent proximate cause doctrine prevents the

application of the auto exclusion in the instant case.

### 1. Concurrent Proximate Cause Doctrine

In *Partridge*, the California Supreme Court held that where an injury is proximately caused by two independent causes—one covered under a policy and the other excluded under a policy—the insurer is liable for the amounts paid in a third party lawsuit to recover for that injury. *Partridge*, 10 Cal. 3d at 100. In *Partridge,* the insured negligently filed down the trigger mechanism of a gun to produce a "'hair trigger action,'" so that the gun would fire with only slight pressure on the trigger. *Id.* at 97. While hunting rabbits from a vehicle, the insured drove the vehicle off the road and hit a bump, which caused the gun to fire and hit a passenger in the vehicle. *Id.* at 97–98. The passenger sued the insured for his injuries. *Id.*

The question at issue in *Partridge* was whether both the insured's automobile policy and his homeowner's personal liability policy provided coverage for liability arising from the passenger's lawsuit against the insured. *Id.* The parties in *Partridge* agreed that the automobile policy was triggered because the firing of the gun arose from the "use" of the vehicle the insured was driving. *Id.* However, the *Partridge* defendant argued that the homeowner's personal liability policy contained an exclusion for "bodily injury . . . arising out of the . . . use of . . . any motor vehicle." *Id.* at 99. The *Partridge* court held that where two risks are concurrent proximate causes of an accident, the insurer is liable so long as one of the causes is covered by the policy. *Id.* at 102. As a result, the *Partridge* court held that the homeowner's policy provided coverage despite the auto exclusion because the accident was jointly caused by two concurrent proximate causes: an insured risk (the filing of the trigger mechanism) and an excluded risk (the negligent driving). *Id.*

However, "[c]ourts following *Partridge* have made it clear that its holding only applies to 'multiple causes that operate[] totally independently of one another.'" *Medill v. Westport Ins. Corp.*, 143 Cal. App. 4th 819, 835 (2006); *see also Partridge*, 10 Cal. 3d at 103 ("[I]nasmuch as the liability of the insured arises from his non-auto-related conduct, and exists independently of any 'use' of his car, we believe the homeowner's policy covers that liability."). In other words,

Case No. 16-CV-04304-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

"in order for *Partridge* to apply there must be two negligent acts or omissions of the insured, one of which, independently of the excluded cause, renders the insured liable for the resulting injuries." *Emp'rs Ins. Co. of Wausau v. Lexington Ins. Co.*, 2014 WL 4187842, at *9 (C.D. Cal. Aug. 19, 2014), *aff'd*, 671 F. App'x 552 (9th Cir. 2016) (citation omitted).

### 2. Application of the Concurrent Proximate Cause Doctrine to the Instant Case

The Court next turns to whether the concurrent proximate cause doctrine prevents the auto exclusion in Defendant's CGL policy from applying in the instant case. For the reasons discussed below, the Court finds that the concurrent proximate cause doctrine does not apply to the instant case because Hernandez's negligence was not independent of Keyarts' negligent driving. In *Farmers Insurance Co. v. Superior Court (Bautista)*, 220 Cal. App. 4th 1199 (2013), the California Court of Appeal addressed the circumstances where two causes are independent under *Partridge* in the context of vehicular accidents, *id.* at 1202. The Court first discusses the *Farmers* decision and its progeny, and then discusses its application to the instant case.

### a. Independent Causation under *Farmers*

In *Farmers*, a grandfather ran over and killed his toddler granddaughter when she left the house without supervision to greet her grandfather on the driveway of the grandparents' home. *Id.* The child's mother filed a lawsuit against the grandfather and the grandmother and alleged that the accident was caused by the grandfather's negligent operation of the truck and the grandmother's negligent supervision of the granddaughter. *Id.*

The grandparents had an auto insurance policy and a homeowner's policy with an exclusion for bodily injury resulting from the operation of a motor vehicle. *Id.* at 1201–02. In a declaratory judgment action, the insurer who provided the homeowner's policy sought a declaration that there was no coverage under the homeowner's policy as a result of the auto exclusion. *Id.* at 1203–05. Specifically, the insurer who provided the homeowner's policy argued that the grandmother's negligent supervision of the granddaughter was not independent of the use or operation of the "motor vehicle," which was actually the instrumentality of the harm. *Id.*

United States District Court
Northern District of California

The *Farmers* court held that the auto exclusion applied and the concurrent proximate cause doctrine did *not* apply because even though the grandmother's negligence did not itself involve the operation of a motor vehicle, that negligence was not independent of the grandfather's negligent use of a motor vehicle. *Id.* at 1208–10. The *Farmers* court reviewed California cases applying the concurrent proximate cause doctrine under *Partridge* and "identified two considerations relevant to determining whether a vehicular and a non-vehicular proximate cause are independent of one another: (1) whether the vehicle (the 'excluded instrumentality' under the insurance policy) played an active role in causing the accident, and (2) the degree to which an asserted non-vehicular cause of the accident was negligent because it exposed [the] victim to the danger of negligent automobile use." *Fire Ins. Exch. v. Vasquez*, 2017 WL 1173730, at *5 (Cal. Ct. App. Mar. 29, 2017) (citing *Farmers*, 220 Cal. App. 4th at 1209–10).[2]

With respect to the first factor, the *Farmers* court noted that in cases where the concurrent proximate cause doctrine has applied, "[t]he excluded instrumentality did not play an active role in causing the injury." *Farmers*, 220 Cal. App. 4th at 1209 (citation and internal quotation marks omitted); *see also Illinois Union Ins. Co. v. Brookstreet Secs. Corp.*, 444 F. App'x 194 (9th Cir. 2011) (holding that *Partridge* did not apply because "[t]he measure of damages for each and every claim [was] loss based upon the [excluded instrumentality].); H. Walter Croskey, *et al.*, California Practice Guide, *Insurance Litigation* § 7:2254 ("[T]here is no coverage under a homeowners policy for injuries that could not have occurred but for operation or use of a motor vehicle.").

In *Partridge*, for example, the concurrent proximate cause doctrine applied because the passenger's injuries were caused by the accidental discharge of the gun, not the car itself, even though the car was a proximate cause of the gun firing. *Partridge*, 10 Cal. 3d at 100; *see also State Farm Fire & Cas. Co. v. Kohl*, 131 Cal. App. 3d 1031 (1982) (concurrent proximate cause

---

[2] *Vasquez* is an unpublished California opinion. However, the Court may "may nonetheless rely on the unpublished opinion[] . . . to 'lend support'" to the idea that the Court's conclusion "accurately represents California law." *Emp'rs Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n. 8 (9th Cir. 2003).

13

doctrine applied where the plaintiff was first injured by an auto accident, but then was further injured by the insured when the insured dragged the injured plaintiff off of the street). In contrast, in *Farmers*, the grandfather's vehicle had played an active role in causing the accident. Indeed, in contrast to *Partridge*, where the "hair trigger action" could have caused the gun to go off at any time even without the use of an auto, the accident in *Farmers* "'involved no instrumentality other than the vehicle itself,' and 'there would have been no accident without the use or operation of' the vehicle." *Farmers*, 220 Cal. App. 4th at 1209; *see also Nat'l Am. Ins. Co. v. Coburn*, 209 Cal. App. 3d 914 (1989) (concurrent proximate cause doctrine did not apply where negligently supervised child was run over and killed by van on which the insured had failed to set the parking brake).[3] Thus, because the excluded instrumentality played an active role in the accident, the *Farmers* court held that the first factor weighed against finding the grandfather's negligent driving and the grandmother's negligent supervision to be independent from one another.

As to the second factor, the *Farmers* court held that the grandmother's "supervision . . . was negligent only because it exposed the children to the danger of negligent automobile use." *Farmers*, 220 Cal. App. 4th at 1210. Specifically, the Court noted that the grandmother knew that the grandchildren would "routinely go out to greet [the grandfather]" when he came home and that "it was foreseeable" that without supervision, the granddaughter "could be injured and killed in just the manner which she was." *Id.* at 1211. Thus, the *Farmer's* court held that the grandmother's supervision of her grandchildren was negligent only because she exposed the

_____

[3] One exception to the line of California cases that have not applied the concurrent proximate cause doctrine where the excluded instrumentality caused the harm is *Underwriters Insurance Co. v. Purdie*, 145 Cal. App. 3d 57 (1983). In that case, a business's liability policy excluded coverage for "any use maintenance or possession of a fire arm by insured or its agent or employee." *Id.* at 61. After an employee shot a customer, the *Purdie* court held that the employer's negligent hiring of the employee was a concurrent proximate cause under *Partridge* that prevented the exclusion from applying. *Id.* However, subsequent California case law has held that *Purdie* involved a "misapplication of the concurrent cause doctrine." *Century Transit Sys., Inc. v. Am. Empire Surplus Lines Ins. Co.*, 42 Cal. App. 4th 121, 128 n.6 (1996). The *Century Transit* court held that "[u]nless the employee fired the gun, the injury would not have occurred. Therefore, liability for negligent hiring was wholly dependent upon an injury caused by [an] excluded event and was not a true 'independent' cause of the plaintiff's injury." *Id.*; *see also Low v. Golden Eagle Ins. Co.*, 2002 WL 386415, *4 n. 5 (Cal. Ct. App. Mar. 12, 2002) ("The analysis applied by *Purdie* has been criticized by a number of cases.").

Case No. 16-CV-04304-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

children to the grandfather's negligent automobile use. *Farmers*, 201 Cal. App. 4th at 1210; *see also Coburn*, 209 Cal. App. 3d at 915 (holding that negligent supervision of children was negligent only because it exposed the children to her negligent failure to set the parking brake in her van). As a result, the *Farmers* court held that the second factor weighed against finding the grandfather's negligent driving and the grandmother's negligent supervision to be independent from one another. Thus, because both of the factors identified in *Farmers* weighed against a finding of independence, the Court held that the concurrent proximate cause doctrine did not apply, and thus, the auto exclusion precluded coverage under the homeowner's policy.

The two-factor *Farmers* analysis has subsequently been applied outside the negligent supervision context. For example, in *Vasquez*, 2017 WL 1173730, the California Court of Appeal addressed an insurance dispute following an accident where the insured backed his truck down a driveway and ran over the insured's tenant's child, resulting in the child's death. *Id.* at *1. The insured owned and lived on the lot where the accident occurred. *Id.* The insured lived in a building located at the back of the lot, and had rental units in the building located at the front of the lot. *Id.* at *2. Originally, the building at the front of the lot only had one rental unit and a laundry room. *Id.* However, the insured converted the laundry room into a second rental unit. *Id.* "The only way to get in or out of that new unit—the one occupied by [the tenant whose child was killed]—was through a doorway that exited to steps that let out immediately onto the driveway where [the insured] parked [his] vehicle[], with no barrier separating the doorway from the driveway. *Id.*

The insured in *Vasquez* had an auto insurance policy, a homeowner's insurance policy, and a renter's insurance policy. *Id.* at *1–2. The homeowner's and renter's insurance policies both contained auto exclusions. *Id.* The mother of the dead child brought suit against the insured and argued that the auto exclusions in the homeowner's insurance and renter's insurance did not apply under *Partridge* because the negligent creation of the laundry unit with a door opening to the driveway was a harm that was independent of the vehicle itself. *Id.* The *Vasquez* court disagreed and held that the negligent design of the second rental unit was not independent from the negligent

driving that caused the accident. *Id.* at *3–6. After reviewing the holding in *Farmers*, the *Vasquez* court held that the insured's truck played an "active role" in harming the child, and that "the asserted non-excluded proximate cause of the accident (the design of the rental unit that opened immediately onto a driveway) was negligent precisely because it exposed Vasquez and her children to the danger of negligent automobile use." *Id.* at *5–6. Thus, the *Vasquez* court held that the auto exclusion in the renter's and homeowner's insurance precluded coverage under those policies because both of the factors in *Farmers* had been satisfied: (1) the excluded instrumentality, the truck, played an active role in the accident, and (2) the negligence that was allegedly not auto-related was negligent because it exposed the victim to the danger of negligent automobile use. *Id.*

### b.    Application of *Farmers* to the Instant Suit

Here, as in *Farmers* and *Vasquez*, Hernandez's negligent direction of passengers and traffic is not independent from Keyarts' negligent driving. The Court addresses the two factors identified in *Farmers* in turn. First, as noted above, the excluded instrumentality here—Keyarts' motorcycle—played an "active role" in causing Cohen's injuries. The auto exclusion in Defendant's CGL policy excludes coverage for "'bodily injury' . . . arising out of or in connection with any 'auto.'" ECF No. 49-1 at 22, Def. CGL Policy. In response to Defendant's requests for admissions, Plaintiff admitted that the motorcycle driven by Keyarts was an "auto" within the meaning of Defendant's CGL policy. *See* Pl. Admissions No. 1. Moreover, Plaintiff admitted that Cohen's injuries "arose out of a motorcycle," "arose in connection with a motorcycle," and "arose out of the use of a motorcycle." Pl. Admissions Nos. 6–8. Indeed, the only harm alleged by Cohen in the underlying action is the harm that was caused by Keyarts' motorcycle hitting Cohen. *See* State Court Compl. at 8–9. Thus, just as in *Farmers*, the accident here "'involved no instrumentality other than the vehicle itself,' and 'there would have been no accident without the use or operation of' the vehicle." *Farmers*, 220 Cal. App. 4th at 1209; *see also Brookstreet*, 444 F. App'x at 195 (holding that *Partridge* did not apply because "[t]he measure of damages for each

Case No. 16-CV-04304-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1    and every claim [was] loss based upon the [excluded instrumentality].").[4]

2         Second, the "asserted non-vehicular cause of the accident was negligent because it exposed

3    [Cohen] to the danger of negligent automobile use." *Vasquez*, 2017 WL 1173730 at *5 (citing

4    *Farmers*, 220 Cal. App. 4th at 1209). In the underlying action brought by Cohen for her injuries,

5    Cohen alleged negligence on the part of both Keyarts and Hernandez. With respect to Keyarts,

6    Cohen alleged that "[Keyarts negligently operated the motorcycle he was riding, negligently failed

7    to communicate with Defendant Hernandez as to pedestrians in the area, and failed to warn

8    [Cohen] and other pedestrians that [Keyarts] was approaching the intersection, while the funeral

9    procession vehicles were stopped." State Court Compl. at 9. With respect to Hernandez, Cohen

10   alleged that Hernandez failed to warn or stop Keyarts, negligently directed Cohen and other

11   pedestrians into the intersection, and failed to warn Cohen and the other pedestrians of Keyarts'

12   approach. State Court Compl. at 8.

13        Just as in *Vasquez* and *Farmers*, these factual allegations show that Hernandez's actions

14   were negligent because they exposed Cohen (and other pedestrians) to Keyarts' negligent

15   automobile use. In *Farmers*, the grandmother's failure to supervise was only negligent because

16   that failure to supervise exposed the children to the known danger of the grandfather's negligent

17   automobile use. In *Vasquez*, the construction of the additional rental unit with a door that opened

18   straight into the driveway was only negligent because it exposed the residents to the risk of a

19   vehicle hitting those residents.

20

21   _____

22   [4] It is possible that the satisfaction of the first factor discussed in *Farmers* is sufficient on its own
     to preclude the application of the concurrent proximate cause doctrine. *See Brookstreet*, 444 F.
     App'x at 195 (holding that *Partridge* did not apply because "[t]he measure of damages for each
23   and every claim [was] loss based upon the [excluded instrumentality]."); *Maryland Cas. Co. v.
     Gonzalez*, 848 F. Supp. 2d 1144, 1152 (E.D. Cal. 2012) ("[*Brookstreet*] focused on the nature of
24   the exclusion and applied it straightforwardly."); *see also* H. Walter Croskey, *et al.*, California
     Practice Guide, *Insurance Litigation* § 7:2254 ("[T]here is no coverage under a homeowners
25   policy for injuries that could not have occurred but for operation or use of a motor vehicle."). This
     is especially true here, where the auto exclusion applies to bodily injury "arising from or in
26   connection with any 'auto'" and seemingly does not distinguish between the causes that preceded
     that injury. ECF No. 49-1 at 22, Def. CGL Policy. However, because, as discussed further below,
27   both of the *Farmers* factors are satisfied here, the Court need not address whether the satisfaction
     of the first *Farmers* factor alone would be sufficient.

28   _____
     17
     Case No. 16-CV-04304-LHK
     ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Similarly here, Hernandez was tasked with directing the funeral procession through the intersection and ensuring that motor vehicle accidents did not occur. Hernandez's negligent direction of traffic and pedestrians, his failure to "warn [Cohen] or other pedestrians of the approaching motorcycle], and his failure to warn Keyarts "of the pedestrians [Hernandez] had directed to cross" the street were negligent only because they exposed the pedestrians to the known danger of negligent automobile use, namely, Keyarts' negligent driving of his motorcycle. The complaint does not identify any other potential harm that could have occurred to the pedestrians as a result of Hernandez's negligence besides those associated with negligent automobile use. *See Farmers*, 220 Cal. App. 4th at 1210 (noting that the grandmother was accused of negligent supervision with respect to automobile use, and not negligence with respect to other harms). Thus, just as in *Vasquez* and *Farmers*, Hernandez's negligence is not independent from Keyarts' negligence because Hernandez's actions were only negligent because they "exposed [Cohen and other pedestrians] to the danger of negligent automobile use." *Vasquez*, 2017 WL 1173730 at *5.

Moreover, in addition to the factors identified in *Farmers*, the allegations in the underlying action show that Keyarts' negligence was affected by Hernandez's negligence and vice versa. In *Partridge*, the two negligent actions—the negligent driving and the negligent filing of the trigger action on the gun—"operated totally independently of one another." *Medill*, 143 Cal. App. 4th at 835. Here, in contrast, Keyarts' and Hernandez's negligent actions interacted with one another. Specifically, the complaint in the underlying action alleges that Keyarts and Hernandez were negligent because they failed to communicate with one another about the actions that they were taking: Keyarts failed to communicate with Hernandez about his approach to the intersection, and Hernandez failed to warn Keyarts about Cohen and the pedestrians. Thus, Keyarts and Hernandez each exacerbated the negligence of the other.

Finally, the Court notes that the exclusion in this case is broader than in *Partridge* and its progeny. In *Partridge*, the auto exclusion applied to "bodily injury . . . arising out of the . . . use of . . . any motor vehicle." *Partridge*, 10 Cal. 3d at 99. Here, the auto exclusion applies to bodily

United States District Court
Northern District of California

injury "arising from or in connection with any 'auto'" and is not limited to causes arising from the "use of" a motor vehicle.  ECF No. 49-1 at 22, Def. CGL Policy.  Thus, even if Keyarts' and Hernandez's negligence were sufficiently independent that Hernandez's negligence did not arise out of the "use of" Keyarts' motorcycle, the broader language of the auto exclusion in Defendant's CGL policy would still apply.  At the very least, Hernandez's negligence—his direction of pedestrians into Keyarts' path, his failure to warn Keyarts about the pedestrians, and his failure to warn the pedestrians about Keyarts—occurred "in connection with" Keyarts' motorcycle.

Thus, both of the factors identified in *Farmers* show that Hernandez's negligence here was not completely independent of Keyarts' negligent driving and that the auto exclusion applies.  Accordingly, the auto exclusion in Defendant's CGL policy applies, and Defendant's CGL policy does not cover the underlying action.

### 3.    Plaintiff's Arguments

Plaintiff raises three arguments to contend that the auto exclusion does not preclude recovery in the instant case despite *Farmers* and *Vasquez*.  The Court addresses each in turn.

First, Plaintiff argues that *LeJeune v. Allstate Ins. Co.*, 365 So. 2d 471, 474 (La. 1978), shows that Defendant's CGL policy should provide coverage in the instant case.  In *LeJeune*, the Louisiana Supreme Court addressed an auto exclusion in a professional liability policy that covered a police officer.  *Id.*  The officer, who was in charge of leading a funeral procession, had failed to secure an intersection of two crossroads.  *Id.*  As a result, a car collided with a vehicle in the funeral procession, and killed a person sitting in the passenger seat.  *Id.*  Relatives of the decedent brought suit against the driver of the vehicle in the funeral procession, the driver of the car that hit the decedent's car, and the police officer who was leading the funeral procession.  *Id.*

The police officer was covered by a professional liability policy.  The police officer's insurer argued that the liability policy did not provide coverage because of an auto exclusion that excluded coverage for "bodily injury arising out of the ownership, operation, or use, loading or unloading, of land motor vehicles."  *Id.* at 478.  The police officer's insurer argued that the policy exclusion applied because the police officer should have used his vehicle to block the intersection

from oncoming traffic. *Id.* The *LeJeune* court disagreed and held that the police officer's negligent direction of traffic constituted "negligence independent of, even though concurring with, his use of an automobile." *See id.* at 479 ("Although he could and should have used his police car to block the intersection and warn approaching drivers of the dangerous situation, it was not any use or abuse of his vehicle itself that led to his liability."). Thus, the professional liability insurance applied.

As an initial matter, the Court notes that *LeJeune* is a 1978 decision issued by the Louisiana Supreme Court, which has no binding authority on this Court. Moreover, it was decided before the California Court of Appeal's decision in *Farmers*. Regardless, even if *LeJeune* were a post-*Farmers* California decision, *LeJeune* does not provide persuasive authority because it contains factual and legal differences that make it inapposite. First, the *LeJeune* court's holding concerning *Partridge* was limited to the question of whether the police officer's failure to use his own vehicle to block the intersection triggered the auto exclusion in the professional liability policy. No party argued, and the *LeJeune* court did not address, the question at issue here, namely, whether the auto exclusion was triggered where an auto driven by an employee of the insured caused an accident as a result of traffic directions provided by another employee of the insured. *See Canales v. City of Alviso*, 3 Cal. 3d 118, 128 n.2 (1970) ("'It is axiomatic that cases are not authority for propositions not considered.'" (citation omitted)).

Moreover, the auto exclusion here is broader than the auto exclusion in *LeJeune*. The auto exclusion in *LeJeune* excluded coverage for "bodily injury arising out of the ownership, operation, or use, loading or unloading, of land motor vehicles." *LeJeune*, 365 So. 2d at 478. In contrast, the auto exclusion here excludes coverage for "'bodily injury' . . . arising out of or in connection with any 'auto'" ECF No. 49-1 at 22, Def. CGL Policy. Above, the Court found that Keyarts' and Hernandez's acts of negligence were not independent. The Court then compared the auto exclusion here to the auto exclusion in *Partridge*, which states that the auto exclusion applied to "bodily injury . . . arising out of the . . . use of . . . any motor vehicle." *Partridge*, 10 Cal. 3d at 99. The Court held above that even if Keyarts' and Hernandez's acts of negligence were not

United States District Court
Northern District of California

sufficiently independent under the *Partridge* auto exclusion, at the very least, the broader language of the auto exclusion in Defendant's CGL policy here would apply. Specifically, the Court held that at the very least, Hernandez's negligence—his direction of pedestrians into Keyarts' path, his failure to warn Keyarts about the pedestrians, and his failure to warn the pedestrians about Keyarts—occurred "in connection with" Keyarts' motorcycle. The *LeJeune* auto exclusion is substantially similar to the auto exclusion in *Partridge*, and thus *LeJeune* can be distinguished for the same reason that the Court distinguished *Partridge* above.

Finally, *LeJeune* and the instant case are distinguishable because the vehicles involved in the accident in *LeJeune* were not driven or owned by the insured police officer while in the instant case, Keyarts' motorcycle was operated by an employee of Norcal, the insured. This distinction matters because absent explicit language applying an auto exclusion to *all* vehicles, the California Court of Appeal has held that auto exclusions only apply to vehicles that are directly connected to the insured. *See Essex v. City of Bakersfield*, 154 Cal. App. 4th 696 (2007) (holding that an auto exclusion did not apply where the autos involved in the accident were not connected to the insured). In *Essex*, for example, the insured had a liability policy with an auto exclusion for "any injury, loss or damage arising out of . . . automobiles." *Id.* at 706. The *Essex* court held that because there was no explicit language about vehicles that were not connected to the insured, the auto exclusion only applied to vehicles where the insured had engaged in "the use of or other acts relating to [the automobiles giving rise to the liability]" or where the liability arose from events "on the insured premises." *Id.* Thus, in *Essex*, because the vehicles were not connected to the insured, the auto exclusion did not apply and the insured's liability policy did apply. *Id.*

In a May 17, 2017 filing before the Court, long after the deadline to file a reply, Plaintiff provided an additional citation to the Court, namely, *Scottsdale Indemnity Co. v. Lexington Insurance Co.*, 2012 WL 6590716, at *5 (C.D. Cal. Dec. 18, 2012). *Scottsdale* involves facts that are substantially similar to *LeJeune*: an insured police officer in a funeral procession was directing traffic and a motorcycle that was unrelated to the insured police officer crashed into another car. *Id.* Moreover, the *Scottsdale* auto exclusion is substantially similar to that in *LeJeune* and

21

*Partridge* as it excludes liability for bodily injury "arising out of the ownership, maintenance, use or entrustment to others of any . . . 'auto.'" *Id.* at *4–5. The *Scottsdale* court held that the auto exclusion did not apply because the accident did not "arise out of the use of the *covered auto*," that is, the motorcycle on which the police officer directing traffic was sitting while he was directing traffic. *Id.* (emphasis added). *Scottsdale* does not affect this Court's holding because, just as with *LeJeune*, (1) *Scottsdale* is not binding authority on this Court, (2) *Scottsdale* was issued before the California Court of Appeal decision in *Farmers*, (3) the auto exclusion is broader here than in *Scottsdale*, and (4) the accident in *Scottsdale* occurred between two vehicles that had no connection to the insured police officer. Thus, for the same reasons that *LeJeune* is distinguishable, *Scottsdale* is also distinguishable. Accordingly, Plaintiff's citation to *LeJeune* and *Scottsdale* do not affect this Court's conclusion that the auto exclusion in Defendant's CGL policy applies.

Second, Plaintiff argues that if the concurrent proximate cause doctrine does not apply, Defendant's CGL policy with Norcal is essentially a "nullity," that is, it would not cover anything. Plaintiff is incorrect. The complete elimination of any coverage under a policy might weigh against the application of an exclusion. *See Mayer Hoffman McCann, P.C. v. Camico Mut. Ins. Co.*, 161 F. Supp. 3d 858, 870 (N.D. Cal. 2016) ("'An agreement is illusory and there is no valid contract when one of the parties assumes no obligation.'" (citation omitted)). However, coverage exists under Defendant's CGL policy outside of circumstances where one of Norcal's insured vehicles hits a pedestrian who was directed into the intersection by a Norcal employee. For example, Defendant's CGL policy includes coverage for any other non-auto-related accidents that occur at Norcal's place of business. Moreover, although the Court need not reach the issue in this case, under *Essex*, it is possible that Defendant's CGL policy would have covered the accident in the instant case if the crash involved an auto that had no connection with Norcal. Thus, the application of the auto exclusion does not cause Defendant's CGL policy to be a "nullity."

Third, Plaintiff argues that applying the auto exclusion in Defendant's CGL policy would be against public policy. Plaintiff cites a San Jose ordinance that requires funeral escort services

to "maintain in full force and effect . . . a motor vehicle liability insurance policy and comprehensive general liability insurance policy." San Jose Code of Ordinances § 11.62.110. However, this ordinance and Plaintiff's public policy argument cannot alter the terms of Defendant's CGL policy or the California Court of Appeal decisions on which the Court relies. Moreover, no public policy concerns are at issue here because Plaintiff's automobile insurance policy with Norcal covered the accident. *Cf. Essex*, 154 Cal. App. 4th at 710 (noting that auto exclusions exist to exclude coverage of risks "*normally covered by other insurance*").

As noted above, Hernandez's negligence is not independent of Keyarts' negligence under *Farmers*, none of Plaintiff's arguments require the opposite conclusion, and thus the concurrent proximate cause doctrine does not apply. Accordingly, the Court GRANTS Defendant's Motion for Summary Judgment as to Plaintiff's first cause of action for duty to defend and third cause of action for declaratory judgment as to the duty to defend.

### C. Duty to Indemnify

An insurer's duty to indemnify "runs to claims that are actually covered, in light of the facts proved. It arises only after liability is established and as a result thereof." *Aerojet-Gen. Corp. v. Transp. Indem. Co.*, 17 Cal. 4th 38, 56 (1997). As the Court has already determined that there was no duty to defend, and therefore no potential for coverage under Defendant's CGL policy, Defendant has also adequately demonstrated that it had no duty to indemnify. Accordingly, the Court GRANTS Defendant's Motion for Summary Judgment as to Plaintiff's second cause of action for duty to indemnify and fourth cause of action for declaratory judgment as to the duty to indemnify.

### D. Rule 56(f)(1) Request for Summary Judgment

Plaintiff requests that the Court grant summary judgment in Plaintiff's favor under Federal Rule of Civil Procedure 56(f)(1), which allows a court to "grant summary judgment for a nonmovant" after "giving notice and a reasonable time to respond." Fed. R. Civ. P. 56(f)(1). Because the Court has found that Defendant did not have a duty to defend or indemnify and thus

granted Defendant's summary judgment motion, Plaintiff's request is DENIED.[5]

## IV.     CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment, DENIES Plaintiff's Request for Summary Judgment under Rule 56(f)(1), and GRANTS Defendant's Administrative Motion to Strike Plaintiff's Supplemental Brief.

**IT IS SO ORDERED.**

Dated: May 26, 2017

_Lucy H. Koh_

LUCY H. KOH
United States District Judge

---

[5] Moreover, without seeking leave of Court, Plaintiff filed a Supplemental Brief in Reply to Defendant's Opposition to Plaintiff's F.R.C.P. 56(f)(1) Request for Summary Judgment.  ECF No. 56.  Defendant has filed an Administrative Motion to Strike Plaintiff's Supplemental Brief.  ECF No. 57.  The Court GRANTS Defendant's Administrative Motion to Strike Plaintiff's Supplemental Brief.

Case No. 16-CV-04304-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT